Opinion of the Court, by
Ch. J. Boyle.
THIS was an indictment for an assault, battery and wounding. The grand jury returned the indictment *195 with an endorsement thereon, that it was “a true bill;” which endorsement was signed by one of their body as foreman.
Wherever a statute directs a thing to be done, without prescribing the manner in which it shall be done, it must be done according to the common law mode.
It is doubtful whether the common law required that any of the grand jurors should sign the endorsement on an indictment, or the finding by a petit jury, and believed an endorsement, without being signed by a foreman or otherwise, was sufficient in either case.
It is doubtful whether the act of 1794 respecting grand juries, repealed the common law on the subject.
It seems that the repealing clause in that act ought to be confined to laws relating to the qualifications of the jurors, and the mode of summoning & organizing them.
*195 The only question which the case presents, is, whether the finding by the grand jury was sufficient, or not. The court below, being of opinion that it was not, gave judgment upon a demurrer to the indictment, in favor of the defendant, to which this writ of error is prosecuted in the name of the commonwealth.
The act of 1794 concerning grand juries, directs the court to nominate a foreman, prescribes the oath to be taken by him and the other jurors, and repeals “all laws and parts of laws theretofore in force in this state, respecting grand juries.” This act was repealed by the act of 1796, relating to criminal proceedings; but the latter act does not direct a foreman to be appointed, or prescribe the form of his oath. Hence it is inferred, that the courts of criminal jurisdiction have no authority to appoint a foreman, and that an endorsement upon the indictment, “a true bill,” signed by one of the jurors as foreman, is not a sufficient finding.
As the act of 1796 has authorised the grand jury to find an indictment, it is obviously necessary that it should be done in some mode. To suppose that the legislature had required a thing to be done, which would be void, let it be done in whatever manner it might, is a supposition too absurd to be entertained for a moment. It is, therefore, a general rule, whenever a statute provides that a thing shall be done, without prescribing the mode of doing it, that it shall be done according to the common law mode; and there can be no doubt, that the finding in this case was sufficient; upon the principles of the common law. We are not, indeed, aware that at common law it was necessary to have a foreman, or that either of the grand jurors should sign their finding, whether it was in the affirmative or negative. A simple endorsement, that it was a true bill, or not a true bill, is all that was required, as we apprehend. But, most indubitably, if the finding without a signature would be good, the circumstance of being subscribed by one of the jurors as foreman, cannot vitiate it; for the maxim, utile per inutile non vitiatur, is applicable as well to criminal as to civil proceedings. We are not apprised of any law requiring the verdict of a petit jury, either in a criminal or civil *196 case, to be signed; and it would, no doubt, be good without it; yet we know that it is the usual practice, for one of the jury to sign it, and very often as foreman; but, most certainly, this circumstance would not render it void; and as little could it vitiate the finding of the grand jury.
But it was urged in the argument, that the act of 1794 repealed, not only the statutes which, prior to that time, were in force, but the common law also, and that the repeal of that act by the act of 1796, did not revive the common law.
Whether the expression, “all laws and parts of laws,” as used in the repealing clause of the act of 1794, should be construed to embrace the common law, as well as the statutes theretofore in force, is questionable; and it is still more so, whether the expression, “respecting grand juries,” should not be construed to relate only to the qualifications of the jurors, and the mode of summoning and organizing them, and not to their verdict or mode of finding an indictment. This limited or restrained construction of the latter expression, is the more rational, since the act of 1794 has made no provision as to the mode of finding an indictment by the grand jury; for although it directs a foreman to be nominated, it does not require him to sign the finding of the jury, nor does it in any other respect prescribe the form in which the finding should be made. If, then, this construction be correct, and the common law, as to the mode of finding by the grand jury, were in force under the act of 1794, it is evident that it must remain so under the act of 1796. But admitting the common law not to be in force in this respect, still, unless we adopt the absurd idea, that the grand jury cannot find an indictment, notwithstanding the law requires them, under the injunction of an oath, to do so, we can see no solid objection to the mode of finding used in this case.
It was contended, that the finding should have been signed by each of the jurors, or that they should have been polled, and each have given his assent in open court; because, as was alleged, these were the natural modes of expressing their assent. But this reason cannot be admitted to be sound. In either of these modes, they must convey the idea of their assent by language, and that, whether oral or written, is artificial; for *197 words have no natural connexion with the ideas they are intended to represent. The former are but the arbitrary and conventional symbols of the latter, as the writers upon this subject universally agree, and as the endless variety of language, ancient and modern, clearly demonstrates. One mode of expression may, indeed, in a certain sense, be said to be more natural than another; but it is because it is more habitual, more consonant to the idiom of the language, or to the customary phraseology of those who use it. But this affords an argument which militates against the modes of finding by the grand jury contended for by the defendant, and which operates in favor of that used by the grand jury in this case; for the latter was the most customary, having been immemorially used, and the propriety of which had never before been questioned. Independent, then, of any law upon the subject, we apprehend the mode used by the grand jury in this case ought to be preferred to those suggested in the argument.
Note.—The Reporter is apprised that the principal point directly decided in this case, cannot occur again, (vide 1 Dig. p. 419,) but has retained it on account of the extensive influence of the general principles laid down.
The judgment of the court below sustaining the demurrer to the indictment, is therefore erroneous, and must be reversed with costs, and the cause remanded, that such proceedings may be had as are not inconsistent with the foregoing opinion, and shall be necessary to a final decision of the cause.